RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0021p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SUSAN ZIEGLER,

    *Plaintiff-Appellant,*

    *v.*

DESIREE AUKERMAN; DONNA BROWN; W.A. FOOTE
MEMORIAL HOSPITAL,

    *Defendants,*

DANIEL JONOSHIES,

    *Defendant-Appellee,*

DISPATCHER ROE; JACKSON COUNTY,

    *Defendants.*

No. 06-2618

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-12234—Robert H. Cleland, District Judge.

Argued: October 23, 2007

Decided and Filed: January 14, 2008

Before: KEITH and ROGERS, Circuit Judges; ALDRICH, District Judge.[*]

---

## COUNSEL

**ARGUED:** Elizabeth S. Warner, Jackson, Michigan, for Appellant. D. Randall Gilmer, KUPELIAN, ORMOND & MAGY, Southfield, Michigan, for Appellee. **ON BRIEF:** Elizabeth S. Warner, Jackson, Michigan, for Appellant. D. Randall Gilmer, G. Gus Morris, KUPELIAN, ORMOND & MAGY, Southfield, Michigan, for Appellee.

---

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

---

## OPINION

---

DAMON J. KEITH, Circuit Judge. Plaintiff Susan Ziegler appeals the district court decision granting summary judgment to Defendant Daniel Jonoshies, a police officer in the Springport Township Police Department, in this civil rights action filed under 42 U.S.C. § 1983. We hold that the district court applied an incorrect legal standard in determining Defendant's summary judgment motion. However, because we also believe that applying the proper legal standard to the district court's findings of fact will not alter the outcome of that court's decision, we **AFFIRM** the district court's grant of summary judgment for Defendant.

## I. FACTUAL BACKGROUND

On the night of June 16, 2004, Plaintiff alleges that she went to W.A. Foote Memorial Hospital "to get a referral to an outpatient counselor to talk about some family problems." (J.A. 9.) According to hospital records, Plaintiff's husband brought her to the hospital because she was depressed and became suicidal. She arrived at the hospital at about 8 p.m. In the first half hour, Plaintiff allegedly reported that she was suicidal and planned to drive her car into a tree.[1] At 9:40 p.m., Plaintiff asked to go outside with her husband. She did not return, and when hospital staff could not locate her, police were notified and sent to Plaintiff's home. At 11:00 p.m., Plaintiff reappeared at the hospital. Plaintiff had just left the hospital to smoke. The police were notified and presumably told not to go to her home.

Upon Plaintiff's return to the hospital, she was examined by Defendant Desiree Aukerman, a nurse in the emergency room. Nurse Aukerman determined that Plaintiff had a medical illness that caused her to pose a risk of serious physical injury to herself or to others within the near future.[2] In her report, she quoted Plaintiff as saying she was at the "end of [her] rope" and thought about driving her car into a tree.[3] (J.A. 87.) Subsequently, Nurse Aukerman filed a mental health petition detailing her findings and gave it to Dr. Donna Brown, a doctor at the hospital. Dr. Brown then met with Plaintiff and determined that she was depressed and suicidal. She filled out a clinical certificate quoting the same "end of the rope" statement Nurse Aukerman had reported. In addition, she stated in the certificate that Plaintiff expressed plans to run into a tree on the way home from work. Subsequently, Dr. Brown requested that Plaintiff be hospitalized.

Some time after Dr. Brown signed the certificate, Plaintiff stated that the law did not allow the hospital to hold her and she announced her intention to leave. Plaintiff then left. At 2:45 a.m., Nurse Aukerman, acting on instructions from Dr. Brown, called 911 and asked the police to locate Mrs. Ziegler and transport her back to the hospital because she was suicidal. Dispatcher Roe, the dispatcher who handled the 911 call, was told that there was a certificate for Susan Ziegler

---

[1] Plaintiff denies that she expressed any suicidal thoughts.

[2] Plaintiff denies that she was mentally ill at the time of these events or that she has ever otherwise been treated for mental illness. She claims that Nurse Aukerman lied in her report, or at least did not have a sufficient basis for her conclusion.

[3] Plaintiff denies that she expressed any suicidal thoughts.

authorizing police action.[4]  Officer Daniel Jonoshies, acting on the dispatcher's request, took Mrs. Ziegler into police custody "outside her house . . . on the walkway or driveway connected to the house" and returned her to the hospital at 3:45 a.m.  (J.A. 13.)

Upon arriving at the hospital, Officer Jonoshies was given the petition and clinical certificate for Mrs. Ziegler, and it was reiterated to him by Nurse Aukerman that the hospital wanted her confined there for mental health reasons.

Following Plaintiff's confinement, Ms. Ziegler filed suit in United States District Court for the Eastern District of Michigan.  Her suit claims violations of 42 U.S.C. § 1983, as well as various state tort laws.  The defendants in her suit are Foote Hospital, Nurse Desiree Aukerman, Dr. Donna Brown, police officers Daniel Jonoshies and Officer Doe (both of the Springport Township Police Department), and a 911 dispatcher named Dispatcher Roe (an employee of the Jackson County Sheriff's office).

In Count I of Plaintiff's § 1983 claim she alleges that police officers Daniel Jonoshies and Officer Doe, as well as Dispatcher Roe, violated her Fourth Amendment right against unreasonable searches of her home and seizure of her person without a warrant or probable cause.  She claims that the defendants, acting under the color of state law, took her into police custody at her home and transported her against her will to a hospital for a mental health confinement.

Count II of Plaintiff's § 1983 claim is against the county that employed the 911 dispatcher. In that count, Plaintiff claims that Jackson County (the dispatcher's employer) has a custom or policy of not having a record keeping system for mental health orders, and as a result, its 911 operators do not have a database to verify the existence or terms of such orders before dispatching police to pick up people on mental health orders.  In addition, she claims that Jackson County failed to train its 911 dispatchers on the constitutional rights of persons to be free from unlawful seizures on mental health accusations for which there is no court order authorizing police involvement.

All defendants filed answers to the complaint, and eventually filed motions for summary judgment.  In addition, Plaintiff filed a motion for leave to amend her complaint to add a Fourteenth Amendment procedural due process violation to Count I.  On November 15, 2006, the district court heard oral arguments on all the pending motions.  On November 21, 2006, the district court issued a written opinion granting summary judgment for Defendants Jonoshies, Roe, and Jackson County on Counts I and II, and denying Plaintiff's motion for leave to file an amended complaint.  Plaintiff appeals only the judgment granted to Defendant Jonoshies, and the denial of her motion for leave to amend her complaint.

## II. STANDARD OF REVIEW

This Court conducts a de novo review of a district court's grant of summary judgment. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000).  Summary judgment is proper only where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  In considering such a motion, the court views the evidence in the light most

---

[4]Plaintiff presents affidavits stating that Officer Jonoshies, the officer who received the 911 dispatch and subsequently returned Plaintiff to the hospital, claimed he was taking Mrs. Ziegler into custody pursuant to a court order, not a certificate.  Officer Jonoshies filed an affidavit stating that (1) dispatch told him there was a clinical certificate requiring Plaintiff's return to the hospital, (2) he obtained a copy of the certificate and attached it to his police report, and (3) that he did not know if a court order was required but "assumed the hospital had completed all the necessary paperwork since they are experts and [ ] believed that the message [he] received from dispatch meant that all necessary paperwork had been completed." (J.A. 21.)  As the Court's analysis below will show, this factual dispute is not material because the relevant question is not what Jonoshies told Plaintiff, but whether Jonoshies acted in a manner that was unlawful.

favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To defeat a properly supported motion for summary judgment, an adverse party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## III. ANALYSIS

### *Elements of a § 1983 Claim*

Mrs. Ziegler appeals the district court's order granting Defendant's summary judgment motion on her § 1983 claim against Officer Jonoshies. The district court granted Defendant's motion because it found that, although Mrs. Ziegler's constitutional rights were deprived by Officer Jonoshies, they were not deprived without due process of law. The court stated:

> To prevail on her claims under 42 U.S.C. § 1983, Plaintiff must demonstrate: (1) a deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under color of state law; (3) occurring without due process of law. 42 U.S.C. § 1983; *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994). Viewed in the light most favorable to Plaintiff, the record does not support a question of fact regarding the third element.

(J.A. 28.)

The district court went on to hold that "Plaintiff's § 1983 claims must fail because the record demonstrates as a matter of law that her involuntary stay at the hospital complied with the procedures required under Michigan law." (J.A. 29.) However, the district court's finding is based on incorrect law. To prevail on a § 1983 claim, a plaintiff need only show that he or she was deprived of a constitutional right by a state actor. There is no additional requirement that Plaintiff show that the deprivation occurred without due process of law. Even a cursory read of 42 U.S.C. § 1983 will reveal that this is true, as the phrase "due process" does not appear anywhere in the statute. Of course, one can allege a due process violation under § 1983, and certain constitutional rights inherently raise due process concerns, but it is not required by the statute that one's due process rights be violated to prevail.

The district court's misstatement of the law is likely the result of the confusing and inconsistent manner in which this Circuit has described the law. The district court cites this Court's opinion in *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994), as support for the proposition that a § 1983 claim requires that the deprivation at issue occur without due process of law. In this respect, the district court is correct. *O'Brien* does state that there are three elements to a § 1983 claim, and that the third element is that the deprivation occur without due process of law. This Court has restated the existence of this third element in other cases as well. *See Rhodes v. McDannel*, 945 F.2d 117, 119 (6th Cir. 1991); *Nishiyama v. Dickson County*, 814 F.2d 277, 279 (6th Cir. 1987).

However, this Court has also ruled in another line of cases that there are only two elements to a § 1983 claim, leaving out the requirement that the alleged deprivation occur without due process of law. For example, in *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006), this Court observed that to state a claim under §1983 a plaintiff need only establish that "(1) the conduct in controversy was committed by a person acting under color of law, and (2) the conduct deprived the plaintiff of a federal right, either constitutional or statutory." *See also Harajli v. Huron Twp.*, 365 F.3d 501, 505 (6th Cir. 2004); *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001). Thus, there exists an internal split within this Circuit as to whether there is a due process requirement in 42 U.S.C. § 1983.

The origin of this Court's misstatement of the elements of a § 1983 claim can be traced back to the Supreme Court case of *United States v. Screws*, 325 U.S. 91 (1945). In *Screws*, the defendants, a sheriff and a police officer, were accused of beating a man to death after arresting him. *Id*. at 93-94. They were found guilty of "willfully" depriving the victim of his civil rights while acting under color of the law pursuant to Criminal Code Section 20, 18 U.S.C.A. Section 52 (1940). *Id*. On appeal, Defendants argued that Section 20 was unconstitutional because it contained no ascertainable standard of guilt in violation of the Fourteenth Amendment. *Id*. at 94. The constitutionality of the statute turned on the level of intent that should be ascribed to the word "willfully." *Id*. at 101. The Supreme Court found that "willful" must be interpreted to mean more than mere bad purpose or evil intent but rather the specific intent to deprive a person of a federal right. *Id*. at 103. This interpretation of "willful" saved the statute from being unconstitutionally vague. *Id*.

Although *Screws* had nothing to do with § 1983, this Court mistakenly cited *Screws* in *Nishiyama v. Dickson County*, 814 F.2d 277, 279 (6th Cir. 1987), for the proposition that § 1983 required a plaintiff to prove that a deprivation of their rights occurred without due process of law. This mistake was repeated in subsequent cases, like *Rhodes v. McDannel*, 945 F.2d 117, 119 (6th Cir. 1991), and *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994), although these cases do not cite *Screws*, but simply their predecessor (i.e., *O'Brien* cited *Rhodes*, *Rhodes* cited *Nishiyma*). It is not clear why this Court in *Nishiyama* confused *Screws*, a case about a criminal statute from the 1940s, to have some meaning on the application of § 1983, but the mistake likely has been overlooked because one can claim a violation of one's due process rights under § 1983, and many other constitutional rights have due process issues intertwined in them. At any rate, it should now be noted that a plaintiff need not prove that his or her rights were deprived without due process to prevail on a § 1983 claim. Now that the elements of the law to be applied to Plaintiff's case are settled, we will review the district court's grant of summary judgment de novo, applying the correct interpretation of § 1983.

### The Seizure of Plaintiff

Mrs. Ziegler argues on appeal that Defendant's summary judgment motion should not have been granted because Defendant violated her Fourth Amendment rights when he took her into custody at her home for a temporary health confinement. Absent suspected criminal activity, a law enforcement official may not physically restrain an individual merely to assess his mental health. Rather, this Court has established that in the context of a mental health seizure, an officer must have probable cause to believe that the person seized poses a danger to himself or others. *See Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997).

A showing of probable cause in the mental health seizure context requires only a "probability or substantial chance" of dangerous behavior, not an actual showing of such behavior. *Id*. (citing *Illinois v. Gates*, 462 U.S. 213, 245 n.13 (1983)). Just as actual innocence will not render invalid an arrest that is properly based upon probable cause that criminal activity was occurring, a mental health seizure can rest upon probable cause even when the person seized does not actually suffer from a dangerous mental condition. *Id*. Courts evaluate the existence of probable cause from the perspective of a reasonable and objective person in the position of the seizing official. *Id*. "If the circumstances, viewed objectively, support a finding of probable cause [then] the arresting officer's actual motives are irrelevant." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988).

In the instant matter, it appears that Officer Jonoshies did indeed have probable cause to detain Mrs. Ziegler. Officer Jonoshies took Mrs. Ziegler into custody and brought her back to Foote Hospital after he received a call from a 911 dispatcher saying that she was suicidal and there was a clinical certificate requiring that she be returned to the hospital. Plaintiff claims that a 911 call reporting that an individual is suicidal is not enough to establish probable cause for a police seizure.

She cites this Court's decision in *Fisher v. Harden*, 398 F.3d 837 (6th Cir. 2005), as support for her argument.

In *Fisher*, this Court found that there was no probable cause for the seizure of a man who was allegedly suicidal. *Id.* at 843. The police in *Fisher* acted on a call made by a passerby who incorrectly thought Mr. Fisher had tied his feet to the railroad tracks in an attempt to commit suicide. *Id.* at 839-40. Despite clear signs that Mr. Fisher was not suicidal,[5] the police officers aimed their firearms at Mr. Fisher, forced him to get face-down on the roadway, and eventually handcuffed him behind his back. *Id.* at 843. This Court held that based on the facts, Defendants had not demonstrated that probable cause existed to believe that Mr. Fisher was a danger to himself or others. *Id.*

The facts in the instant matter are quite distinguishable from those of *Fisher*. Here, Officer Jonoshies did not receive a 911 call from a passerby, but from a medical professional, Nurse Aukerman of Foote Hospital, who had been ordered to make the call by a doctor of the same hospital. In addition, the dispatcher informed Officer Jonoshies that there was a clinical certificate confirming what the dispatcher was telling him, that Mrs. Ziegler was suicidal and that the police had the authority to take her back to the hospital. Furthermore, it was clear from the telephone call that Mrs. Ziegler had already been hospitalized, presumably for mental health reasons. In reviewing these facts together, and perhaps even separately, Officer Jonoshies had more than enough information to reasonably believe that there was a "substantial chance" that Mrs. Ziegler posed a dangerous risk to herself or others.

Mrs. Ziegler seems to think that the fact that she did not exhibit dangerous behavior when Officer Jonoshies took her into custody makes Officer Jonoshies's belief that there was a "substantial chance" she was dangerous unreasonable. This simply is not true. A showing of probable cause in the mental health seizure context does not require an actual showing of dangerous behavior. *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997) (citing *Illinois v. Gates*, 462 U.S. 213, 245 n.13 (1983)). It is enough that Officer Jonoshies had information such that a reasonable person in the officer's position would believe it probable that Mrs. Ziegler was a danger to herself or others.

Although this Court in *Fisher* did consider the officers' observations of the plaintiff in deciding that the officers lacked probable cause to seize the plaintiff, that decision must be viewed in the context of all the information presented before the Court. As stated previously, the only information the officers in *Fisher* had about the mental state of the plaintiff was from a telephone call made to the Sheriff's office by the passerby. *Fisher*, 398 F.3d at 839. Given the general level of uncertainty surrounding the veracity of such a call, it was necessary that the officers obtain other information to meet the probable cause standard. In *Fisher*, the only other information the officers were able to obtain came from their own observations of the plaintiff. Thus, their observations, by necessity, played a large role in determining whether probable cause existed.

In the present case, the information the officers received about Plaintiff's mental health came from a much more credible source, if not the most credible source, the hospital itself. In addition, the hospital staff stated in their 911 call that their concern for Plaintiff's mental health was supported by a documented examination of Plaintiff, the clinical certificate. As a reasonable officer would view this information alone as sufficient to support a showing of probable cause, the officer's own

---

[5]The first clear sign that Mr. Fisher was not suicidal, or at least not tied to the railroad tracks, was when the officers ordered him to come to the road and he was able to do so immediately. As the Court noted, "[t]his alone would have caused a reasonable officer to question the veracity of the attempted suicide report." *Fisher*, 398 F.3d at 843. In addition, he complied with the officers' order to put his rifle down, he walked towards the officers in a normal manner, and he was wearing hunting attire (further supporting the idea that he was out hunting, not on a suicide mission). *Id.*

observations of Plaintiff are of little importance. This is especially true in a situation such as this where the plaintiff allegedly suffers from a mental illness that prevents her from realizing her own need for treatment.

In reading the facts in the light most favorable to the plaintiff, it is clear that Officer Jonoshies had probable cause to seize Mrs. Ziegler, and thus did not violate her Fourth Amendment rights when he took her into custody. Consequently, Mrs. Ziegler's § 1983 claim on this ground must fail as a reasonable jury could not find that Officer Jonoshies violated her constitutional rights when he took her into custody.

### The Search of Plaintiff's Home

Mrs. Ziegler also argues on appeal that Officer Jonoshies violated her Fourth Amendment right against warrantless searches of her home by taking her into custody at her home. The "chief evil" against which the Fourth Amendment protects is the physical invasion of the home, and the Fourth Amendment requires that searches of the home be reasonable. *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003) (quoting from *Payton v. New York*, 445 U.S. 573, 585 (1980)). One of the touchstones of the reasonableness requirement is that the police must generally obtain a warrant based upon a judicial determination of probable cause before entering the home. *Id.* If the police enter a home without a warrant, the entry is presumptively unreasonable unless the government proves otherwise. *United States v. Ogbuh*, 982 F.2d 1000, 1003 (6th Cir. 1993).

The Supreme Court has carefully crafted certain exceptions to the warrant requirement, one of which is the exigent-circumstances exception. Pursuant to this exception, the government can overcome the presumption that a warrantless entry is unreasonable if it proves that "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Brigham City v. Stuart*, 126 S.Ct. 1943, 1947 (2006) (citation and quotation marks omitted). The Supreme Court has articulated four situations that may give rise to the exigent circumstances: (1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others. *Id.* In the present case, the "risk of danger" exigency is implicated. *See id.* ("One exigency obviating the requirement of a warrant is the need to assist the persons who are seriously injured or threatened with such injury.").

This exigency has been most frequently applied in cases where the government actors were performing "community-caretaker" functions rather than traditional law-enforcement functions. *See, e.g.*, *Michigan v. Tyler*, 436 U.S. 499, 509 (1978) (applying the risk-of-danger exception to a warrantless entry of a burning building); *Thacker*, 328 F.3d at 254-55 (applying the risk-of-danger exception in response to a 911 call reporting an injury). The Supreme Court recently clarified in *Brigham City*, 126 S.Ct. at 1948, however, that whether the officers' motivation for entering is to arrest suspects and gather evidence or to assist the injured is irrelevant so long as the circumstances objectively justify the action. *Id.* (approving the police officers' warrantless entry into a house to break up a fight in progress); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) (holding that "[s]ubjective intent . . . alone does not make otherwise lawful conduct illegal or unconstitutional") (citation and quotation marks omitted).

The government actor, in order to satisfy the exigent-circumstances exception in the present case, must show that there was a risk of serious injury posed to himself or his fellow officer or others that required swift action. *See id.* In reviewing whether exigent circumstances were present, we consider the "totality of the circumstances and the inherent necessities of the situation at the time." *United States v. Rohrig*, 98 F.3d 1506, 1511 (6th Cir. 1996) (citation and quatation marks omitted).

Here, Officer Jonoshies took Plainitiff into custody "outside her house . . . on the walkway or driveway connected to the house"[6] after receiving a call from a 911 dispatcher that Plaintiff was suicidal and that there was a clinical certificate requesting that she be returned to the hospital. The mere fact that the hospital classified Plaintiff as suicidal is enough to show that she was a danger to herself. Whether the present danger required swift action must be determined by looking at all the facts. In addition to the 911 call informing Officer Jonoshies that Plaintiff was suicidal, the call also informed Officer Jonoshies that there was a clinical certificate ordering him to take Plaintiff to the hospital. A reasonable officer would infer from this information that Plaintiff was at a high risk to commit the dangerous act, as her mental state had been examined by medical professionals, and had been determined to be so severe as to require immediate hospitalization. In addition, inherent in the fact that the certificate was requesting that Plaintiff be "brought back" to the hospital is the fact that Plaintiff had at some point been at the hospital and presumably left without being discharged. This fact increases the likelihood that Plaintiff had a mental state that required immediate attention, as she likely left before doctors had completed treating her.

The type of danger at issue should also be considered. The act of suicide requires no help from another individual and can be accomplished very quickly. To require that an officer who has received information from a credible source, or sources, that an individual is a suicidal risk, wait to obtain a warrant before saving that victim, would likely result in countless preventable deaths. Surely the "chief evil" the Fourth Amendment was designed to protect against was not intended to be taken this far. In viewing all of these facts together, it can be said that Officer Jonoshies acted reasonably in taking Mrs. Ziegler into custody at her home without waiting for a warrant.

### Amending the Complaint

In addition to ruling on the issue of summary judgment, the district court denied Plaintiff's motion for leave to amend the complaint to add to Count I, the § 1983 cause of action, a claim that the police procedures violated the Due Process Clause of the Fourteenth Amendment because there was no court order. (J.A. 34.) We review the decision of the district court under an abuse of discretion standard of review. *See LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1104 (6th Cir. 1995). To deny a motion to amend, a court must find "at least some significant showing of prejudice to the opponent." *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986). The *Moore* case emphasizes the need for the district court to give reasons for its decision and the importance of naming prejudice to the opponent. The court noted that "'delay alone, regardless of its length is not enough to bar it if the other party is not prejudiced.'" *Moore*, 790 F.2d at 560 (quoting 3 Moore's Federal Practice, ¶ 15.08 at 15.76).

In this case, the district court stated that it was denying Plaintiff's motion because Plaintiff had ample time to add her Fourteenth Amendment theory to her § 1983 claim, and if the court were to grant her leave to amend, Defendant's motion would have to be converted to a motion for partial summary judgment. Although such a conversion would create an inconvenience for Defendant, it is not clear that it would create the type of significant prejudice necessary to justify denying Plaintiff's motion. Plaintiff's Fourteenth Amendment claim would not require the district court to consider any new facts, and Defendant would not be burdened with conducting new discovery to combat the new claim, as discovery has yet to begin.[7] However, whether the district court erred in

---

[6] It is questionable whether the driveway or walkway of a fenced-in area on someone's property constitutes a part of their home in which they have an expectation of privacy. We will not reach this question today as it is not necessary to dispose of this case.

[7] Officer Jonoshies cites *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828 (6th Cir. 1999), to support his argument that the district court properly denied Plaintiff's motion to amend. However, unlike in *Duggins*, Plaintiff did not file her motion to amend after discovery had already closed.

denying Plaintiff's motion to amend is not dispositive. As the previous analysis shows, Plaintiff's Fourteenth Amendment claim would nonetheless fail. The police officers did not need a court order to seize Plaintiff; they only needed probable cause.[8] Moreover, to the extent the amended complaint would state a claim based on "failure to provide a procedure . . . required by state law" (Motion for Leave to File Amended Complaint at 4), such violations do not inherently amount to federal due process violations. *See, e.g., Experimental Holding Inc. v. Farris*, 503 F.3d 514, 520 (6th Cir. 2007).

### *Michigan Health Code*

Appellant claims that the district court misinterpreted the Michigan Health Code requiring a court order for police involvement in a temporary involuntary mental health evaluation or hospitalization. As the previous analysis shows, whether or not the Michigan Health Code requires a court order for police involvement is irrelevant, because the police officer had probable cause to seize Mrs. Zeigler, and thus did not violate her Fourth Amendment rights when he took her into custody.

### IV. CONCLUSION

For the aforementioned reasons, we **AFFIRM** the district court's grant of Defendant's motion for summary judgment.

---

[8]Although a state may impose a rule for searches and seizures that is more restrictive than the Fourth Amendment, the state rule does not have to be applied in federal court. *See United States v. Wright*, 16 F.3d 1429, 1434 (6th Cir. 1994); *United States v. Allen*, 954 F.2d 1160, 1168 (6th Cir. 1992).