NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0030n.06
Filed: January 15, 2009

No. 07-2520

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| FREDDIE WILLIAMS, JR., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| DETROIT BOARD OF EDUCATION, et al, | ) | |
| | ) | |
| Defendants-Appellants. | ) | OPINION |
| | ) | |

Before: **MARTIN and GILMAN, Circuit Judges; and CARR, District Judge.**[*]

**JAMES G. CARR, DISTRICT JUDGE**. This is an appeal from the district court's order

granting a renewed motion for summary judgment to the defendants in a defamation suit brought by

Freddie Williams, Jr., a former high school principal for Detroit Public Schools.

The United States District Court for the Eastern District of Michigan, the Honorable Patrick

J. Duggan, District Judge, concluded that the plaintiff principal was a public official for the purposes

of his defamation claim, and that he was therefore required to show actual malice and bear the

---

[*]The Honorable James G. Carr, Chief Judge of the Northen District of Ohio, sitting by
designation.

1

burden of proving defendants' statements to be false. The district court concluded that plaintiff failed to satisfy either requirement. The district court also denied plaintiff leave to amend his complaint.

For the following reasons, we **AFFIRM** summary judgment for the defendants. We also **AFFIRM** the district court's denial of leave to amend.

## Background

The plaintiff, Freddie Williams, Jr., has worked as a teacher and administrator at Detroit Public Schools (District) since 1978. Williams was the principal at Trombly Alternative High School (Trombly) from 1997 until the Detroit Board of Education (Board) terminated him in January, 2002.

In early 2000, the Board received complaints that Williams was misappropriating school funds and equipment. The Trombly school bookkeeper complained about Williams' financial practices and a budget deficit. Teachers complained that Williams wrote checks to himself drawing on school funds, purchased computers from vendors with whom he had a personal relationship, and submitted invoices, reimbursable to Williams, for work done by students and school administrators. Other complaints stated that Williams was frequently absent, took home computers, and bought personal supplies with district funds. In response, the Board's Internal Audit Department (Audit Department) began to investigate.

Patricia Adams, the Director of the Audit Department, initially oversaw the audit. On May 18, 2002, the Audit Department produced a first draft of its report. The report concluded that Williams was responsible for financial irregularities at Trombly, and his conduct violated district policy and procedure. On June 18, 2001, the Board placed Williams on administrative leave without pay.

In the Summer of 2001, Patricia Adams left the Audit Department, and Angela Taylor replaced her as Director. Taylor and her staff met with Williams and his attorney to discuss the allegations in the draft audit report, and Williams's opinions were included in subsequent drafts. The auditors completed a revised audit report on December 17, 2001.

On December 18, 2001, the Detroit News published an article about the audit report. The article set forth some of the report's allegations against Williams. The article also recounted an interview with the Wayne County prosecutor and paraphrased comments by Williams's attorney, Michael C. Hetchman. The Detroit Free Press also published articles on the audit report's allegations.

In January, the District brought disciplinary charges against Williams based on the audit report's findings. The District conducted a hearing on January 18, 2002.

At the hearing, Hechtman stated that Williams would not respond to any charges at the meeting or in writing because he believed he had not been provided with documents located at Trombly, and that he needed these documents to respond to the charges in the audit. Taylor responded that she had produced the requested documents. The Board terminated Williams as a principal and suspended him as a teacher. Williams voluntarily retired from his position as teacher, effective August, 2002.

In September, 2002, a private school hired Williams as its principal, but fired him three days later because of the charges published the by the Board. On December 12, 2002, Williams requested that the Board retract the allegations against him, but the Board never responded.

Williams filed suit against the Board, Chief Executive Officer Lavonne Sheffield, and John Does, in Wayne County Circuit Court on December 17, 2002. Defendants removed the lawsuit to

3

the U.S. District Court for the Eastern District of Michigan. Williams then moved to voluntarily dismiss his claim under 42 U.S.C. § 1983 and remand the matter to state court. The district court granted Williams's motion. On February 13, 2004, Williams filed a motion for leave to amend his complaint in state court. The court granted his motion in part and denied it in part, permitting the Williams to add several federal claims. On March 23, 2004, defendants again removed the case to federal district court.

On March, 12, 2004, Williams filed a second suit in the Wayne County Circuit Court alleging state and federal claims against the Board, Burnley, Sheffield, and John Does. On April 8, 2004, defendants removed this case to federal district court. The district court consolidated the two cases on July 8, 2004. In the consolidated case, the Williams asserted eleven claims, including state tort law for defamation, invasion of privacy, and wrongful discharge, and challenges to the manner of his discharge under the United States and Michigan constitutions.

On September 9, 2005, the district court granted summary judgment for the defendants. Williams appealed the district court's ruling on October 4, 2004. On March 5, 2007, this Court upheld the grant of summary judgment on all claims except the Williams's defamation claim.

On July 3, 2007, Williams filed a motion for leave to amend, seeking to add five claims:

> (1) breach of contract; (2) fair and just treatment pursuant to Article I, Section 17 of the Michigan Constitution; (3) fraud and misrepresentation; (4) violation of the Michigan Teacher Tenure Act; and (5) "[d]efamation of principal and as teacher for the school year June August [sic] 29, 2001, to June 30, 2002."

*Williams v. Detroit Bd. of Educ.,* Nos. 04-71064, 04-71841, 2007 WL 2638790, at *2 (E.D. Mich., Sept. 6, 2007). The Michigan constitutional claim for fair and just treatment had been previously

4

dismissed on summary judgment. On September 6, 2007, the District Court denied the Williams's motion to amend.

On October 30, 2007, after further briefing on the defamation claim, the District Court granted summary judgment to the defendant on all claims and dismissed Williams's complaints with prejudice. The district court concluded that Williams, as the principal of a public school, was a public official and that he was therefore required to show that the defendant acted with actual malice and bear the burden of proving the falsity of defendants' statements. The district court concluded that Williams failed to create an issue of material fact as to actual malice or falsity. As an alternative basis for its ruling, the district court noted that the defendants' statements are a matter of public concern, that therefore the Williams bore the burden of proving the statements false, and that the he failed to do so.

Williams filed notice of appeal from this judgment on November 29, 2007.

**Discussion**

**1. Defamation Claim**

We affirm the district court's grant of summary judgement to the defendants on Williams's defamation claim. Without reaching whether Williams is a public official, we hold that the controversy over Williams's alleged misappropriation of public school funds is a matter of public concern, triggering a requirement that he prove that the allegedly defamatory statements are false. Because Williams has failed to create a genuine issue of material fact as to whether the statements are false, summary judgment is proper.

We review the district court's grant of summary judgment *de novo. Whittlesey v. Cole,* 142 F.3d 340, 342 (6th Cir. 1998). Summary judgment is appropriate only where there is "no

5

genuine issue of material fact" and the "movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). This Court may affirm the district court's grant of summary judgment on any grounds that the record supports, even if the district court relied on different grounds. *See U.S. v. Allen,* 106 F.3d 695, 700 n.4 (6th Cir. 1997); *Russ' Kwik Car Wash v. Marathon Petroleum Co.,* 772 F.2d 214, 216 (6th Cir. 1985).

### A. Elements of a Defamation Claim

To establish a defamation claim, a plaintiff must show that the defendant 1) made a "false and defamatory statement concerning the plaintiff"; 2) communicated the statement to a third party without privilege; and 3) acted with "fault amounting to at least negligence." *Royal Palace Homes v. Channel 7 of Detroit,* 495 N.W.2d 392, 393-94 (Mich. 1992). The plaintiff must further show that the defamatory statement is actionable "irrespective of special harm" [defamation *per se*] or that publication of the statement caused special harm [defamation *per quod*]. *Id.*

If the plaintiff is a public official or a public figure, the First Amendment requires the plaintiff to prove that the defendant's statements are false and that the defendant acted with actual malice. *New York Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964); *Gertz v. Robert Welch,* 418 U.S. 323, 342 (1974). A defendant acts with "actual malice" where the defendant knew the allegedly defamatory statement was false, or acted "with reckless disregard of whether it was false or not." *Sullivan,* 376 U.S. at 280.

Alternatively, if the plaintiff is neither a public official nor a public figure, but the defendant's statements relate to a matter of public concern, the plaintiff must show that the statements are false. *Philadelphia Newspapers v. Hepps,* 475 U.S. 767, 776 (1986); *Royal Palace Homes,* 495 N.W.2d at 394. Under Michigan law, a private plaintiff in a defamation case involving

6

a matter of public concern must show that the defendant acted negligently regarding the truth of the allegedly defamatory statement. *Rouch v. Enquirer & News of Battle Creek,* 487 N.W.2d 205, 211 (Mich. 1992).

A plaintiff must plead his defamation claim with specificity, and cannot rely on general, conclusory allegations. *Royal Palace Homes,* 495 N.W.2d at 393.

### B. Audit Controversy As a Matter of Public Concern

As an alternative basis for granting summary judgment to the defendants, the district court held that the audit controversy was a matter of public concern, and that Williams had failed to satisfy his burden of proving that the defendants' statements were false. We affirm the district court's ruling on this basis.

Even if the plaintiff is a private person, the First Amendment requires the plaintiff to satisfy a heightened standard where the defendants' allegedly defamatory statements are a matter of public concern. In *Gertz v. Robert Welch,* 418 U.S. 323, 347 (1974), the Supreme Court held that states may define the standard of liability where the plaintiff is a private individual and the allegedly defamatory statements are a matter of public concern, provided that "they do not impose liability without fault." Further, the Court has held that in cases involving a private plaintiff and a matter of public concern, the plaintiff bears the burden of proving that the allegedly defamatory statements are false. *Hepps,* 475 U.S. at 776.

In *Rouch v. Enquirer & News of Battle Creek,* 398 N.W.2d 245 (Mich. 1987), the Supreme Court of Michigan articulated state law rules for cases involving private plaintiffs and matters of public concern within First Amendment parameters. The court declined to adopt a more stringent rule than that required by *Gertz* and *Hepps*, rejecting the contention that the plaintiff must show

7

actual malice to demonstrate liability. *Id.* at 252, 258. In a private-plaintiff/public-interest case, the plaintiff must therefore show the falsity of the alleged defamatory statement and that the defendant acted negligently regarding the truth of the statement. *Id.*

To determine whether a statement relates to a matter of public concern, courts must consider the expression's "content, form, and context . . . as revealed by the whole record." *Dun & Bradstreet v. Greenmoss Builders Inc.,* 472 U.S. 749, 762 (1985) (citing *Connick v. Myers*, 461 U.S. 138, 147-148 (1983)). Courts will consider the medium through which the allegedly defamatory statement was transmitted and the expected scope of distribution. *Dun & Bradstreet,* 472 U.S. at 762 (statements in the plaintiff's credit report, which were "solely in the interest of the speaker and its specific business audience" and were only sent to five subscribers are not a matter of public concern.). *See also Flamm v. Am. Ass'n of Univ. Women,* 201 F.3d 144, 150 (2d Cir. 2000) (statement that plaintiff attorney unethically solicits victims of gender discrimination is a matter of public concern where statements appear in a publication disseminated widely to a "public audience with an interest in issues of gender discrimination"). In *Rouch,* the Michigan Supreme Court suggested that matters of public concern "may be said to include any matter reported on by the media." 398 N.W.2d at 266.

In this case, the misappropriation of funds at Trombly is a matter of public concern. Public education holds considerable interest for the American public; editorials, newspaper columns dedicated to education and local television news regularly provide information about schools. Peter S. Cane, *Defamation of Teachers: Behind the* Times*?*, 56 Ford. L. Rev. 1191, 1206 (1988). In this case, Detroit media, including the Detroit News and Detroit Free Press, carried ongoing reports of the school district's financial situation and even pressed the district to release the audit reports. This

indicates that the Detroit community is highly interested in the fiscal well-being of their public school system.

Detroit residents' interest in their school system's well-being is justified because a well-functioning public educational system is critical to our democracy. In *Brown v. Board of Education,* 347 U.S. 483, 493 (1954), the Court emphasized that education is "perhaps the most important function of state and local governments" and noted "the importance of education to our democratic society." In *Plyler v. Doe*, 457 U.S. 202, 221 (1982), the Court reaffirmed the "importance of education in maintaining our basic institutions" and education's "fundamental role in maintaining the fabric of our society." *See also Ambach v. Norwick*, 441 U.S. 68, 76 (1979) (noting "[t]he importance of public schools in the preparation of individuals for participation as citizens, and in the preservation of the values on which our society rests.")

The controversy over misappropriation of funds at Trombly is a matter of public concern. The district court's grant of summary judgment, therefore, is proper if the plaintiff failed to create an issue of material fact as to whether the defendants' statements are false.

**C. Whether Plaintiff Failed to Show That Defendants' Statements Are False**

The district court concluded that Williams failed to create a genuine issue of material fact as to whether the alleged defamatory statements were false. Ordinarily, defendants may assert truth as an affirmative defense to a defamation claim. Where defendants' statements relate to a matter of concern, however, the plaintiff bears the burden of proving they are false. *Rouch,* 398 N.W.2d at 266.

Williams discusses two types of evidence that he claims create an issue of material fact as to whether the allegations are false. First, he alleges that the District denied him access to documents that would have helped him rebut the charges in the audit. Second, Williams relies on the testimony

9

of Angela Taylor, a school board auditor, claiming she admitted that defendants' statements were false when she declined to affirm that Williams's conduct did not violate certain enumerated district employee regulations.

Even if taken as true, none of the evidence that Williams invokes suggests that the audit's core allegation – that he misappropriated funds – is false. The fact that Williams may not have had access to certain documents used to create the audit report does not show that the audit contained false statements. Williams does not allege that the documents in question were incorrect or unreliable, or that the District misconstrued them in the audit report. If true, Williams's claim suggests, at most, that the defendants shirked their discovery obligations. The district court, however, found that the District did produce the requested records for Williams and his attorney. *Williams,* 2005 WL 2219032, at *5.

Angela Taylor's testimony is similarly unhelpful to Williams. In her deposition, Taylor refused to link allegations Williams' acts of fiscal misconduct to violations of specific district employee regulations. Taylor did not, however, testify that the audit report had falsely described Williams's acts of misconduct or deny that Williams misappropriated school funds. Moreover, even though Taylor declined to state which employee regulation Williams had violated, she did affirm that his conduct violated district policy and procedure. Her statements, therefore, do not create an issue of material fact as to whether the audit report's primary allegation – that Williams misappropriated school funds – is false.

Williams has failed to create a genuine issue of material fact about the falsity of the defendants' statements. Because the controversy over Williams's alleged misappropriation of funds

is a matter of public concern, the district court's grant of summary judgment to the defendants on the defamation claim was proper.

## 2. Denial of Plaintiff's Motion to Amend

Williams argues that the district court abused its discretion in denying his motion to amend his original complaint on March 5, 2007, under Federal Rule of Civil Procedure 15(a). Two and one-half years after discovery closed, Williams sought to add the following five claims: 1) breach of contract; 2) fair and just treatment under Article 1, Section 17 of the Michigan Constitution; 3) fraud and misrepresentation; 4) violation of the Michigan Teacher Tenure Act; and 5) an additional defamation claim. Williams is not pursing claims 4) or 5) for the purposes of this appeal. The district court denied Williams's motion for leave to amend. We review the denial of leave to amend for abuse of discretion. *See Ziegler v. Aukerman,* 512 F.3d 777, 786 (6th Cir. 2008). The district court properly denied leave.

Rule 15(a) permits amendments to pleadings "by leave of court or by written consent of the adverse party" at any time during the litigation, and states that "leave shall be freely given when justice so requires." Fed. R. Civ. Pro. 15(a). A court nevertheless should deny leave to amend in some circumstances, including "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman v. Davis,* 371 U.S. 178, 182 (1962).

This Court has affirmed denials of leave to amend in cases involving much less delay than this one. In *Parry v. Mohawk Motors of Michigan,* 236 F.3d 299, 306 (6th Cir. 2000), this Court upheld a denial of leave to amend where the movant sought leave over one year after his original

11

complaint, and after the trial court had both granted summary judgment to the opposing party and denied the movant's motion for reconsideration. Likewise, in *U.S. v. Midwest Suspension & Brake,* 49 F.3d 1197, 1202 (6th Cir. 1995), we upheld a denial of leave to amend. The court held that the defendant "failed to proceed with due diligence" when the defendant sought leave to amend two years after the original complaint. *Id.; see also Duggins v. Steak N' Shake, Inc.,* 195 F.3d 828, 834 (6th Cir. 1999) (upholding denial of leave to amend where movant "delayed pursuing this claim until after discovery had passed, the dispostive motion deadline had passed, and a motion for summary judgement had been filed" without justification for the delay).

In this case, the trial court did not abuse its discretion when concluding that Williams's request for leave to amend would result in undue delay. Williams sought to amend over five years after he filed his initial complaint, and over two years after discovery closed. His untimely motion, if granted, would have artificially prolonged the instant litigation.

### Conclusion

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment to the defendants on plaintiff's defamation claim, and we **AFFIRM** the district court's denial of leave to plaintiff to amend his complaint.