NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0676n.06

No. 10-1205

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Sep 15, 2011*

LEONARD GREEN, Clerk

INTERNATIONAL METAL TRADING )
INCORPORATED; PAUL TERRAULT, )
                 )
     **Plaintiffs-Appellants,** )
                 )
v. )
                 )
CITY OF ROMULUS, Michigan; CHARLES KIRBY, )
Chief of Police, Romulus, Michigan; JOSHUA )
MONTE, Detective; MICHAEL ST. ANDRE, Deputy )
Chief; JOHN LEACHER, Lieutenant; RICK )
LANDRY, Detective, )
                 )
     **Defendants-Appellees.** )

**ON APPEAL** FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

**O P I N I O N**

BEFORE: NORRIS, GIBBONS, and GRIFFIN, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.** Plaintiffs International Metal Trading, Inc. ("International Metal"), and its owner, Paul Terrault, allege that police officers of Romulus, Michigan violated their right to procedural due process by taking their property and disposing of it without a hearing. Plaintiffs sued in federal court, asserting a claim under 42 U.S.C. § 1983.[1] The district court found that plaintiffs could not establish that the police deprived them of a protected interest and that they had adequate state-law remedies. It therefore granted summary judgment to defendants. We now affirm.

---

[1] Plaintiffs also alleged a state-law cause of action for conversion. The district court dismissed that claim; plaintiffs do not appeal that decision.

**I.**

Plaintiff Paul Terrault buys and sells metals, crates, baskets, containers, and automotive parts for International Metal. According to him, he purchased 50,000 fuel injectors in June 2006. He intended to store the injectors because he believed there would be a shortage that would enable International Metal to realize a profit. He also purchased knock down crates[2] in the fall of 2006. Terrault stored these items in separate warehouses, but eventually decided to consolidate them at a lot in Romulus owned by Nelson Paper Recycling ("NPR"). Terrault claims that he loaded the crates and fuel injectors into a trailer provided by NPR. Though supplied by NPR, the trailer was registered to Christopher Mowinski. Terrault first loaded the injectors into the trailer and then loaded the less valuable crates in front of the injectors to keep them out of sight of anybody who opened the trailer.

The trailer was transported to the NPR lot in late December. Terrault claims he parked the trailer in the back of the lot and backed it next to a cement ramp so that the doors could not be fully opened unless the trailer was moved. He also put a padlock on the trailer's doors. Terrault asserts that he checked the trailer once every week and that it remained undisturbed. There is no evidence that anyone other than Terrault looked inside the loaded trailer before the events that gave rise to this litigation.

Sometime in March 2007, Romulus police arrested Christopher Mowinski for possession of stolen furnaces. Mowinski indicated that he had other property stored at NPR's lot, and a confidential informant relayed to the police that NPR's manager allowed stolen property to be stored

---

[2] Knock down crates are simply new or used storage crates.

at the lot.  The police executed a warrant to search the NPR lot.  Among other items, the warrant directed police to look for stolen property from Lear Corporation and to examine trailers owned by Mowinski.[3]  When the search began, the police cordoned off the NPR lot and barred entry.  Among the officers sent to execute the warrant were defendants Deputy Chief Michael St. Andre, Lieutenant John Leacher, and Detectives Joshua Monte and Rick Landry.

Terrault arrived at the NPR lot a few hours after the search began.  He was not allowed onto the lot but spoke with Detective Monte at the scene.  According to Terrault, he told Monte that he had valuable property in a padlocked trailer located in the back of the lot.   Although the NPR lot contained 50 to 100 trailers and Terrault was denied entry onto the lot, Terrault asserts that he pointed out his trailer to Monte.  Detective Monte remembers speaking with a number of people near the gate, and recalled that someone claimed to own a trailer full of property.

During the search, three trailers were seized and later removed from the NPR lot.  One was the trailer in which Terrault claims to have stored his property.  Detective Landry found the trailer. Landry claims it was not at the back of the lot but near the center, did not have a lock, and was not blocked off by a cement ramp.  With Detective Monte present, Landry opened the trailer's doors. Monte and Landry only saw crates, which were stamped "Property of Lear Corporation."  In order to prepare an inventory, Landry entered the trailer and crawled across the top of the crates to see if there was anything else inside the trailer.  He asserts that he did not find anything other than crates with Lear markings.  Landry learned that the crates were stolen, and a representative from Lear

---

[3] Lear had previously reported that its crates were stolen.

identified the crates as Lear property. The police then released the crates to Lear. Afterward, the empty trailer was towed to another lot where Terrault discovered it. According to the police, no attempt was made to contact Terrault because they were unaware that he was claiming a property interest in the contents of the trailer.

After discovery, defendants filed a motion for summary judgment, which the district court granted. The court construed plaintiffs' §1983 cause of action as a procedural due process claim under the Fourteenth Amendment. With respect to the knock down crates, the court concluded that plaintiffs could not establish a property interest in the crates and, in any event, they had adequate state-law remedies that satisfied due process. The court also found that there was no genuine issue of disputed fact indicating that the police deprived plaintiffs of their fuel injectors.

## II.

We review a district court's grant of summary judgment de novo. *Ziegler v. Aukerman*, 512 F.3d 777, 781 (6th Cir. 2008). Summary judgment is proper if there is no genuine issue as to any "material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In deciding a motion for summary judgment, the district court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Ziegler*, 512 F.3d at 781.

Plaintiffs must establish three elements for their procedural due process claim:

(1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest.

*Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) (citing *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990)). Plaintiffs claim that they were deprived of two types of property: the fuel injectors and the knock down crates. We will deal with each in turn.

1. Fuel Injectors

Plaintiffs rely entirely on Terrault's testimony that the fuel injectors were stored in the trailer. But defendants deny finding or seizing any fuel injectors. Assuming arguendo that plaintiffs have produced sufficient evidence that the police found and seized the fuel injectors, they still have not made out a procedural due process claim because they have produced no evidence that the police deliberately deprived them of their property. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property") (emphasis in original). As the Supreme Court explained in *Daniels*, " [h]istorically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty or property." *Id.* at 331 (emphasis in original). Because plaintiffs cannot establish what ultimately happened to the fuel injectors, there is no evidence that there was a non-negligent decision to deprive them of this property. They cannot show, for instance, that the fuel injectors were not simply lost during transport or accidently misplaced while being inventoried. Because they are unable to explain what happened to the fuel injectors, they have failed to show any constitutional violation on their claims related to these items.

2. Knock Down Crates

Terrault claims that the trailer contained 156 crates. Defendants concede that knock down crates marked "Property of Lear Corporation" were found in the trailer and returned to Lear. Because plaintiffs never indicated that their crates had Lear markings, the district court concluded that plaintiffs failed to establish a protected property interest in the crates. Even if we were to disagree with the district court and conclude that plaintiffs have produced sufficient evidence to make out a question of fact concerning whether they were deprived of a protected property interest, they still must establish that the deprivation occurred without their having been afforded adequate procedural rights.

Plaintiffs assert that they were entitled to a judicial hearing after the police seized their property. The district court held that no hearing was required because plaintiffs had adequate state-law remedies: a replevin proceeding under Mich. Court Rule 3.105 and a civil tort remedy under Mich. Comp. Laws § 600.2920(1). The Supreme Court has clarified that "[i]n some circumstances . . . a common-law tort remedy for erroneous deprivation[] satisfies due process." *Zinermon v. Burch*, 494 U.S. 113, 128 (1990). We have pointed out that it is the plaintiffs' burden to prove that such state remedies are inadequate. *See Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983) ("[I]n section 1983 damage suits for deprivation of property without procedural due process the plaintiff has the burden of pleading and proving the inadequacy of state processes, including state damage remedies to redress the claimed wrong."); *see also Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 585 n.5 (6th Cir. 2004).

Plaintiffs have not attempted to make this showing, but have insisted that they may file their § 1983 claim without first exhausting state remedies. While it is true that there is no exhaustion requirement under § 1983, plaintiffs must nevertheless show that the process available under Michigan law is inadequate. In this case, plaintiffs have not addressed the adequacy of the state's post-deprivation tort scheme at all. *See Fox v. Van Oosterum*, 176 F.3d 342, 349 (6th Cir. 1999) (dismissing § 1983 suit because the plaintiffs failed to present evidence that the same Michigan statutory remedies were inadequate). Accordingly, plaintiffs' procedural due process claim related to these items also fails.

**III.**

The judgment of the district court is **affirmed**.