NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 10a0319n.06

Nos. 07-3514; 08-4701

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BRUCE JACKIM and NINA L.J. JACKIM, | ) | |
| | ) | |
| Plaintiffs-Appellants (07-3514), | ) | **FILED** |
| | ) | **May 25, 2010** |
| v. | ) | LEONARD GREEN, Clerk |
| | ) | |
| SAM'S EAST, INC, and WAL MART STORES EAST, INC, | ) | |
| | ) | |
| Defendants-Appellees. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| NINA L.J. JACKIM, | ) | |
| | ) | |
| Plaintiff-Appellant (08-4701), | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF BROOKYLN, CITY OF | ) | |
| BROOKLYN POLICE DEPARTMENT, | ) | |
| SAM'S EAST, INC., WAL MART | ) | |
| STORES EAST, INC., JANE DOE, | ) | |
| DAN MEADOWS, J. ALBANY, | ) | |
| JOHN DOE, and JOHN DOE, II, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:  KENNEDY, COLE, Circuit Judges, and JORDAN[*], District Judge.

KENNEDY, Circuit Judge.  Plaintiffs appeal the district court's grant of partial summary

judgment against them in their claim for damages arising out of their arrest for disorderly conduct.

---

[*]The Honorable Robert Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

Because the district court properly concluded that one plaintiff's claim for unreasonable seizure was barred because she pleaded no contest to the charges against her, and because there was no evidence that the retail establishment participated in a conspiracy to deprive plaintiffs of their right to a fair trial, we **AFFIRM**.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 25, 2003, plaintiffs Bruce and Nina Jackim were shopping at a Sam's Club retail store in Brooklyn, Ohio. As they attempted to check out, a dispute arose over whether they were required to pay taxes on their purchase. Unable to resolve the matter with the cashier, they proceeded to the membership desk. At the membership desk, they began to argue with the customer service representative.

Dan Meadows, who is also employed as a police officer for the Brooklyn Police Department, was working for Sam's Club as a security guard on this afternoon. He came over to the Jackims, and asked for Mr. Jackim's identification. According to Meadows, Mr. Jackim refused to provide it, so Meadows placed Mr. Jackim under arrest for disorderly conduct and obstructing official business. When Meadows attempted to handcuff Mr. Jackim, a struggle ensued and both men fell to the floor. Two other officers – John Albany and Mike Mackovjack – assisted in subduing Mr. Jackim. During the struggle, Mrs. Jackim "tr[ied] to climb and grab into the middle of the group during the handcuffing of Mr. Jackim." She also was arrested.

Plaintiffs' version differs. Mr. Jackim testified that "without warning or provocation or any cause whatsoever, [Meadows] suddenly abruptly jumped up to the counter to within 18 inches of my face from having been several feet back, and shouts at me. . .." According to Mr. Jackim, Meadows then threatened to arrest Mr. Jackim if he did not provide his identification. Mr. Jackim reached into

2

his wallet to hand Meadows his identification, when Meadows placed a handcuff on his wrist. Meadows then slapped Mr. Jackim, and then "body slammed [Mr. Jackim] into the counter." (*Id.* at 105.)

Both plaintiffs were charged with disorderly conduct and resisting arrest in Parma Municipal Court. In preparation for their criminal trial, plaintiffs subpoenaed a video recording of the incident captured by Sam's Club's security cameras, and received it on June 2, 2003. However, the timestamp on the video was delayed by twelve hours, and plaintiffs lacked equipment to view the videotape. Plaintiffs issued three additional subpoenas to Sam's Club employees. Each was returned marked "NOT FOUND IN MY COUNTY" by the deputy who attempted service. Apparently plaintiffs did not pursue the matter further with the state courts at this time.

On February 23, 2004, Mrs. Jackim pleaded no contest to attempted disorderly conduct, a misdemeanor. She was fined $75, which she paid. Mr. Jackim proceeded to trial, and was found guilty. However, he successfully argued on appeal that the trial court erred by excluding evidence of the video recording. He was again tried, and again found guilty. There is no indication that either plaintiffs' convictions have been overturned or otherwise invalidated. Mrs. Jackim has requested a pardon from the Ohio governor.

On May 25, 2005, plaintiffs filed suit in the Cuyahoga County Court of Common Pleas, and defendants removed the matter to federal district court. In their amended complaint, plaintiffs allege deprivation of equal protection, unreasonable seizure/excessive force, conspiracy, in violation of 42 U.S.C. § 1983, and state law claims for reckless infliction of emotional distress and negligence. Named as defendants are the City of Brooklyn, the City of Brooklyn Police Department, officer

Meadows, officer Albany, and several John and Jane Doe police officers (collectively the "Brooklyn Defendants"). Also named as defendants are Sam's Club and Walmart.

Plaintiffs retained Tex Bynum as a video expert to assist them with viewing the security camera footage. (R. 83.) Defendants requested copies of the video tapes, and Mr. Bynum purported to produce a number of "fair duplicates." The parties then met at a Sam's Club location on June 14, 2006, to review the tape. While plaintiffs' copy worked, the duplicates provided to defendants did not. Unable to resolve who should be given access to which tape, the parties asked for the district court's involvement. In an order dated July 18, 2006, the district court ordered plaintiffs to lodge their tape with the court, and each side submit proposals for allowing fair access to the tape. Plaintiffs submitted their copy to chambers (although not within the time parameters set by the court). After reviewing the proposals, the district court decided that it should retain custody of the tape, but would allow experts for each side thirty days to have access to the tape, provided they first signed an affidavit agreeing not to alter the tape. Plaintiffs' expert received the tape first, and produced a DVD version that was submitted to the district court as an exhibit to an "addendum affidavit" purporting to supplement an expert report that he had previously filed.

The balance of the litigation consisted of a number of procedural missteps by the plaintiffs. As discussed below, these missteps did nothing to help their case. First, plaintiffs filed an offensive motion for summary judgment, and almost three months later, filed a supplement to this motion. Finding that factual issues precluded summary judgment in favor of plaintiffs, the district court denied the motion, and plaintiffs do not challenge this on appeal. In response to the plaintiffs' motion, the Brooklyn Defendants filed a response and their own motion for summary judgment. The Brooklyn Defendants argued that plaintiffs claims were barred by *Heck v. Humphrey*, 512 U.S. 477

4

(1994), collateral estoppel, or lack of evidence. Sam's Club also filed a response and cross-motion for summary judgment, raising similar arguments. Plaintiffs responded, but did not address the arguments raised.[1]

Sam's Club then filed another motion for summary judgment, contending that it was not a state actor and therefore may not be sued under section 1983. Plaintiffs responded to this motion, arguing that there was a civil conspiracy based on Sam's Club's refusal to comply with a subpoena and the state trial court's initial ruling to exclude evidence of the videotape.

The district court granted defendants motions in part, holding:

(1) All claims asserted by Nina Jackim pursuant to § 1983 against the Brooklyn Defendants must be dismissed, either because they are barred by her criminal conviction or there is nothing in the record to support their continued assertion (unreasonable seizure, excessive force, equal protection and/or conspiracy); (2) the equal protection claim asserted by Bruce Jackim against the Brooklyn Defendants must be dismissed because there is no evidence (or even allegations) in the record to support it; (3) the conspiracy claim asserted by Bruce Jackim against the Brooklyn Defendants must be dismissed to the extent (but only to the extent) it is premised on either an alleged equal protection violation or his claim of excess force, again because there is nothing in the record to support such a claim; (4) Bruce Jackim's Monell and respondeat superior claims asserted pursuant to § 1983 against the City of Brooklyn are inadequate as a matter of law and must be dismissed; (5) all claims against Sam's Club pursuant to § 1983, by either Plaintiff, must be dismissed due to the absence of state action; (6) all state law claims by both Plaintiffs against Sam's

---

[1]The only part of plaintiffs' response that can even arguably be construed as responsive to the defendants' motion is the following:

The Defendants also filed a Motion for Summary Judgment in this case. There is no record of a suit that is pending against the Plaintiffs in this court. The only litigation which is on record is between the parties in the instant case filed against the Defendants by the Plaintiffs. In this case, Defendants are in a defensive posture in opposition to Plaintiffs' civil rights claims. The Defendants have not invoked the jurisdiction of this court to litigate and to judicially resolve a certain claim against the Plaintiffs.

> Club should be dismissed due to a lack of an independent basis for this Court to
> continue to assert jurisdiction over those claims

All claims by Mrs. Jackim were dismissed, as were all claims by either party against Sam's Club.

The district court also found that Mr. Jackim was likely to be barred by the *Heck* doctrine, but held

the case in abeyance to allow him to challenge his conviction. Finding "no just reason for delay,"

Fed. R. Civ. P. 54(b), the district court certified a partial final judgment. Plaintiffs filed a notice of

appeal, assigned case number 07-3514.

Meanwhile, the case was reassigned to a different district judge. Plaintiffs filed a motion to

amend judgment, arguing that the district court erred in relying on Mrs. Jackim's state court

conviction because it was a "void judgment." The district court denied this motion. Plaintiffs filed

a second notice of appeal, assigned case number 08-4701. Both appeals were consolidated for our

resolution.

Plaintiffs challenge only three aspects of the district court's ruling. In appeal 07-3514,

plaintiffs argue that the district court ignored the "best evidence rule," and should not have granted

summary judgment to Sam's Club on the basis that it was not a state actor and cannot be sued under

section 1983. Appeal 08-4701 concerns only Mrs. Jackim, and involves a challenge to the district

court's application of collateral estoppel to her lawsuit.

## STANDARD OF REVIEW

"This court reviews a district court's order granting summary judgment de novo."

*Havensure, L.L.C. v. Prudential Ins. Co. Of America*, 595 F.3d 312, 315 (6th Cir. 2010) (quoting

*Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009)). Rule 56 "mandates the entry

of summary judgment, after adequate time for discovery and upon motion, against a party who fails

6

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). " In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Jones v. Potter*, 488 F.3d 397, 402-03 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**DISCUSSION**

**I. Appeal 08-4701**

Plaintiff Mrs. Jackim challenges the district court's conclusion that her conviction on her plea of no contest collaterally estops her from pursuing her claim for unlawful seizure based on her arrest and that there was no basis on which it could overturn plaintiff's criminal conviction.[2] The district court also concluded that she had not proven an excessive force claim, found that she had made no factual allegations to support her equal protection claim argument, and declined to exercise supplemental jurisdiction over the state law claims. Plaintiff does not challenge these aspects of the decision in her appeal.

---

[2]Plaintiff inexplicably spends her entire brief arguing that the district court improperly found her claim was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). She concedes that *Heck* applies to her case, but should not bar her suit, because she retains hope of vacating her conviction. This concession was ill-advised. This court has held that *Heck*'s bar does not apply when habeas relief is unavailable because the plaintiff is sentenced to a non-custodial sentence. *Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592, 603 (6th Cir. 2007). However, it does not matter here because the district court did not rely on *Heck* when entering judgment against plaintiff. Instead, in a footnote, while noting *Heck*'s application, the district court held that "the collateral estoppel bar is sufficient standing alone to justify judgment in favor of Defendants on Mrs. Jackim's claims." (R. 126, at 26 n. 21.) The failure of plaintiff to challenge the basis for the court's judgment is sufficient for us to affirm. *See, e.g.*, *Pagan v. Fruchey*, 492 F.3d 766, 768 n.1 (6th Cir. 2007) (en banc) ("It is well established that issues not raised by an appellant in its opening brief . . . are deemed waived." (quotations omitted)).

7

Plaintiff asserts that her arrest was made without probable cause, and therefore it violated the Fourth Amendment. She cannot challenge the officer's probable cause that she committed a crime because she conceded that fact when she pleaded no contest. "As a general rule, a federal civil action brought under § 1983 is not a venue for re-litigating issues that were decided in a prior state criminal case." *McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005) (citing *Allen v. McCurry*, 449 U.S. 90, 103-105 (1980)). This court has interpreted Ohio law to bar litigation of a false imprisonment claim under indistinguishable circumstances. In *Walker v. Schaeffer*, 854 F.2d 138 (6th Cir. 1998), two plaintiffs were arrested for disorderly conduct. Like the plaintiffs here, they pleaded no contest in Ohio state court. The *Walker* plaintiffs appealed their convictions within the state court, and also filed a section 1983 lawsuit in federal court alleging that the officers had arrested them without probable cause and wrongfully imprisoned them. This court held that the plaintiffs were estopped from challenging the probable cause of their detention, which was fatal to their lawsuit for false arrest and imprisonment. The district court correctly held that *Walker* compels the same result here.

Notably, plaintiff does not contend on appeal that the district court erred in relying on *Walker*. Instead, in her reply brief, plaintiff does argue that preclusive effect should not be given to the state court judgments here because the proceedings were unfair. She states that the "municipal court proceedings were patently unfair and void on the face of the record where Prosecutor Goldberg did not comply with Rule 16 of the Ohio Rules of Criminal Procedure by failing to respond to *Request for Bill of Particulars* and *Request for Discovery* and pursued a plea on the nonexistent charge of 'attempted disorderly conduct.'"

8

First of all, she waived this argument by not making it in her opening brief. *See, e.g.*, *United States v. Perkins*, 994 F.2d 1184, 1191 (6th Cir. 1993) ("Issues raised for the first time in a reply brief are not properly before this court."). More significantly, this argument is without merit. It is true that if a plaintiff is deprived of a "'full and fair opportunity' to litigate [an] issue in the earlier case," courts will not extend preclusive effect to the earlier decision. *Allen v. McCurry*, 449 U.S. 90, 95 (1980). However, "[t]here has been no indication that in state court plaintiff[], then represented by counsel, did not have a reasonable and fair opportunity to litigate [her] contentions that defendants violated [her] constitutional or lawful rights under the circumstances of [her] arrest and detention." *Walker*, 854 F.2d at 143. Plaintiff does not explain what discovery was withheld from her, or how she was prejudiced by the prosecutor's reluctance to provide a bill of particulars. In any event, when she chose to plead no contest rather than litigate, she relinquished her right to challenge procedural irregularities in her prosecution. *See, e.g.*, *Foutty v. Maxwell*, 174 Ohio St. 35, 38-39, 186 N.E.2d 623, 626 (1962) ("An accused by pleading guilty to an indictment waives the right to a bill of particulars."). Plaintiff had the option of insisting upon a trial where her acquittal would have cleared the way for this lawsuit. She chose to forgo her opportunity to litigate it by pleading no contest, and is precluded from taking a different position in this forum.

Perhaps plaintiff contends that the district court's ruling was premature because there are still avenues for her to challenge her conviction. However, other than a passing reference in a reply brief to an "application for executive clemency with the Ohio Parole Board," she fails to explain what avenues these are, and failed to present this argument to the district court. Plaintiff points to no precedent for the proposition that district courts must delay adjudication of their claims whenever there is some theoretical possibility – however remote – that their conviction may be overturned.

9

*Contra Walker*, 854 F.2d at 143 (finding claims barred after a no contest plea under Ohio law even though plaintiffs had appealed their convictions and there was no indication whether the appellate process had been completed). The district court properly dismissed plaintiff's claim for unreasonable seizure.

Finally, plaintiff asserts that the district court judges involved in her case were biased. Plaintiff's argument is without merit. We affirm the district court's dismissal of her claims.

## II. Appeal 07-3514

Both plaintiffs appeal the district court's conclusion that Sam's Club is not liable under section 1983 because it is not a "state actor." Because we affirm the district court's holding that Mrs. Jackim is collaterally estopped from pursuing her lawsuit here, the outcome of this appeal matters only for Mr. Jackim.[3] Plaintiffs raise two challenges to the district court's dismissal of their lawsuit against the Sam's Club defendants: the district court overlooked plaintiffs' evidence indicating a conspiracy between the Sam's Club defendants and state actors, and the district court failed to apply the "best evidence" rule. Both arguments are without merit.[4]

---

[3]The district court stayed proceedings as to Mr. Jackim's claim against the Brooklyn defendants pending Mr. Jackim's appeal of his conviction. No one has challenged this course of action on appeal.

[4]During oral argument, plaintiffs advanced a new argument that they should have been permitted to amend their complaint. To begin, they never raised this argument in their briefing, and therefore have waived it. *See United States ex. rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 450 n. 6 (6th Cir. 2008). Moreover, the district court's grant of summary judgment remains proper, regardless of what the complaint would have said, because plaintiffs never provided evidence supporting their allegations in response to defendants' motions for summary judgment. *See Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 500 n.1 (6th Cir. 2007) ("Unless [plaintiff] can establish grounds upon which to reverse the district court's grant of summary judgment . . . her challenge to the court's failure to rule on her motion to amend, even if successful, would not change the disposition of this action.").

The more substantial argument of the two is plaintiffs' contention that there was sufficient evidence showing a conspiracy between Sam's Club and the Brooklyn defendants, so Sam's Club may be liable under section 1983. "A private party's actions constitute state action under section 1983 where those actions may be 'fairly attributable to the state.'" *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (en banc) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 947 (1982)). "The Supreme Court has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." *Id.* (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)).

This court has also held that "a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983." *Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000).

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004) (quotations omitted). However, "'[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

11

Plaintiffs' response to Sam's Club's motion for summary judgment raised this argument, but they did not attach any evidence to their response, nor did they point to evidence in the record that support their claims. This by itself could be fatal to their claims. We have emphasized time and again "that there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407, 410 (6th Cir. 1992) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir. 1989)). Here, plaintiffs bore the burden of proof at trial. All the defendants had to do was "point[] out to the district court []that there is an absence of evidence to support the nonmoving party's case" to impose a duty on plaintiffs to respond. *Celotex*, 477 U.S. at 325. Once defendants fulfilled this burden, "[t]he non-moving party may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Plaintiffs' response to Sam's Club's motion was devoid of references to the record, which makes it wholly insufficient to meet their burden.[5]

---

[5] The conduct of plaintiffs' counsel through this litigation reveals a profound misunderstanding of the rules that govern proceedings in federal court. For example, after summary judgment was entered, plaintiffs filed a motion for reconsideration, contending that defendants erred by not introducing certain evidence and "[t]he court cannot consider the entire record if portions are not of record." Plaintiffs bore the burden of proof on their claims at trial, so it was *plaintiffs'* obligation to see that evidence supporting their claims was in the record, and *plaintiffs'* obligation to direct the district court's attention to those portions of the record supporting their claims. If there were something missing from the record, it was plaintiffs' duty to add it. When plaintiffs do not provide competent evidence to the court supporting their claims at the proper time, summary judgment is appropriate. This is the entire purpose of Rule 56.

What plaintiffs did do was to assert that the following showed a "single plan" between the defendants:

> [T]he surveillance tape was delivered to Counsel for Plaintiffs by Sam's Club in compliance with a subpoena, that the duly qualified expert opined that the surveillance tape had been tampered with, that the trial court denied admission of the tape into evidence at the request of the Prosecutor, that the Plaintiffs and their tape expert were prohibited by the court from testifying about the tape and reprimanded for mentioning that a surveillance tape existed - before the jury - two subpoenas issued to Sam's Club relating to the tape were not responded to or enforced, Defense Counsel's Motion to Compel the subpoenaed information relating to the surveillance tape was denied and ultimately the tape which contained critical exculpatory evidence of the Plaintiffs' innocence was suppressed by the trial court.

In their briefing to this court, plaintiffs again indicate that their claim of conspiracy is premised solely on suppression or tampering of evidence, and not the conduct of the officers during the arrest. ("Danny Meadows' act of police misconduct on May 25, 2003 exposed Sam's Club to civil liability under Ohio case law regardless of whether he was working as an employee of Sam's Club or as an independent contractor. To remove that civil liability, all that Sam's Club [and the City of Brooklyn] had to do was suppress exculpatory evidence and make sure that Bruce and Nina were convicted of a crime." (alteration in original)).

This allegation – devoid of any evidentiary support – falls short of creating a triable fact on Sam's Club's participation in a conspiracy to deprive plaintiffs of their constitutional rights. Of course, because "[r]arely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire, . . . circumstantial evidence may provide adequate proof of conspiracy." *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000) (internal quotations omitted). Nevertheless, there still must be *some* "evidence from which to infer that the defendants acted in concert" in their unlawful acts. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003). Here,

13

there is no evidence that Sam's Club directed the prosecutor's office or the state trial judge. *See Memphis*, 361 F.3d at 906 (finding that complaint stated a claim of conspiracy when it alleged an agreement and that the government "continuously conferred with agents of [private entities] Phillips and Pro-Tech before confronting members of the [Union]" and "that Phillips directed and conspired with the City of Memphis to direct police officers to harass, threaten and intimidate the plaintiff"). Simply cooperating with a prosecutor during a criminal case is not sufficient to show conspiracy. *See Moldowan*, 578 F.3d at 395 (holding that allegation of conspiracy between the prosecution's expert witnesses who testified falsely about defendant's dental marks and the prosecution was not sufficient, despite allegation that they "arrang[ed] for the photographing of the bite marks on Ms. Fournier and for making molds of Mr. Moldowan's and Mr. Cristini's dentition"). The logical path from plaintiffs' allegations to a conclusion that Sam's Club acted in concert with a state actor to deprive plaintiffs of their rights relies not on evidence or even a reasonable inference, but on pure fantasy. Thus, plaintiffs' claims are "insufficient to withstand a motion for summary judgment [because they] . . . lack the requisite material facts and specificity necessary to sustain a conspiracy claim." *Id.* (quotations omitted, alteration in original). The district court properly found that plaintiffs failed to create a triable issue of material fact on their claims.

Citing the "best evidence rule," plaintiffs also argue is that it was improper for the district court to reject their claim of state action by relying on "lay opinion testimony and conclusions of law by lay witnesses on subjects that call for expertise not possessed by the witnesses." As best we can tell, plaintiffs reason that the district court should not have given any weight to the affidavit of Meadows when the "best evidence" available of what transpired was the recording of the event.

14

The first problem is that plaintiffs never objected to the district court's consideration of the affidavits on the basis of the "best evidence rule."[6] "If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived," unless enforcing a waiver rule would constitute a "gross miscarriage of justice." *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (collecting cases).[7] The more serious problem with the argument is that it completely fails to understand Rule 1002 and related rules of evidence, which are often – and confusingly – referred to as the "best evidence rule." *See* Fed. R. Evid. 1001, Advisory Committee Notes to 1972 Proposed Rules (noting that it is "misleading" to speak of a "best evidence" doctrine); Wright & Gold, 31 Fed. Prac. & Proc. Evid. § 7183 ("The phrase by which the subject of Article X is generally known, the best evidence doctrine, obscures the scope of Rule 1002."). The rule "is concerned only with proving the terms of a writing" or recording. *Wallin v. Greyhound Corp.*, 341 F.2d 521, 523 (6th Cir. 1965) (citations omitted); *see also* Fed. R. Evid. 1002 ("*To prove the content of a writing, recording, or photograph*, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." (emphasis added)). Defendants offered evidence in the form of an affidavit of someone with personal knowledge that was germane to what transpired on May 25; the trial court

---

[6] Plaintiffs did file a motion to strike Meadows' affidavit, but did not raise any argument about the best evidence rule or even mention the videotape.

[7] We also note that plaintiffs never even submitted the videotape to the district court as evidence. It is true that plaintiffs lodged the tape with the district court early in the litigation, (R. 81), but this was pursuant to a court order that was entered to resolve a discovery dispute. Significantly, plaintiffs never cited to or even mentioned the videotape in their briefing on the issue of summary judgment.

15

properly considered that evidence. *See* Fed. R. Civ. P. 56(e) (providing that affidavits may be considered on summary judgment). Defendants were not trying to prove the content of a recording, but what actually occurred on the day (which also happened to be captured by videotape as well as viewed by other witnesses). Meadows' knowledge of the day did not come from the video, but his own senses and memory. The fact that a video recording may at times be in fact the "best" evidence of what occurred does not render first-hand testimony of the event incompetent. *See O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 598-99 (6th Cir. 2009) (holding that best evidence rule did not prohibit trial court's consideration of a plaintiff's testimony recalling when he reported to work, even though written work schedules existed).[8] Plaintiffs' arguments are without merit, and the district court properly granted judgment in favor of Sam's Club.

## CONCLUSION

Finding no merit to plaintiffs' arguments, we **AFFIRM**.

---

[8]One treatise helpfully explains:

> For example, assume a witness to a bank robbery testifies that he saw the defendant commit the crime. This testimony raises no issue under Rule 1002 even if the contents of a bank surveillance photo reveal the same fact, the witness signed a written statement describing what he saw, and a recording was made of defendant planning the robbery. . . . In sum, any witness with knowledge of facts that exist independent of the contents of a writing, recording, or photograph may testify without raising an issue under Rule 1002.

Wright & Gold, 31 Fed. Prac. & Proc. Evid. § 7184.