[Cite as *Bodager v. Campbell*, 2013-Ohio-4650.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| Eric D. Bodager, | : | |
|       Plaintiff-Appellant, | : | Case No. 12CA828 |
| v. | : | |
| Damon Campbell et al., | : | <u>DECISION AND JUDGMENT ENTRY</u> |
|       Defendants-Appellees. | : | **RELEASED: 10/07/13** |

<u>APPEARANCES</u>:

James S. Gentile and Rhys B. Cartwright-Jones, Youngstown, Ohio, for Appellant.

Kenneth E. Harris, FREUND, FREEZE & ARNOLD, Columbus, Ohio, for Appellees.

_____

KLATT, P.J. *

{¶ 1}   Plaintiff-appellant, Eric D. Bodager, appeals from a judgment of the Pike County Court of Common Pleas that granted summary judgment in favor of defendants-appellees, Damon Campbell, Brian Anderson, and the City of Waverly.[1]  For the following reasons, we affirm.

{¶ 2}   On January 1, 2007 at approximately 12:20 a.m., Bodager was driving his white Mercedes Benz east on Emmitt Avenue in Waverly, Ohio.  At the same time, Anderson, a patrol officer for the Waverly Police Department, was driving his patrol car west on Emmitt Avenue.  Given the rate at which Bodager's Mercedes approached Anderson's patrol car, Anderson suspected that Bodager might be speeding.  Anderson used his dash-mounted radar to determine Bodager's speed.  According to the radar,

---

[1] Waverly is now a village, not a city.

Bodager was driving 46 m.p.h.—11 m.p.h. over the posted 35 m.p.h. speed limit.

{¶ 3}   After Bodager's Mercedes passed Anderson's patrol car, Anderson made a U-turn to follow him.  As Anderson finished his turn, he saw Bodager's Mercedes making a left turn onto Ford Avenue.  Bodager did not signal before turning.  Anderson accelerated to catch up to Bodager's Mercedes, and he also turned left onto Ford Avenue. During the turn, Anderson activated his patrol car's overhead lights.

{¶ 4}   As Anderson was turning onto Ford Avenue, he saw Bodager's Mercedes turn left onto an alley that ran behind businesses that fronted the north side of Emmitt Avenue.  Again, Bodager failed to signal before turning.  Anderson followed Bodager and activated his siren just prior to turning left onto the alley.

{¶ 5}   The alley curved multiple times before intersecting with Emmitt Avenue. According to Anderson, Bodager's Mercedes stopped immediately before reaching Emmitt Avenue.  Anderson turned off his siren and prepared to exit his patrol car.  At that point, Bodager's Mercedes accelerated and turned right onto Emmitt Avenue.  Anderson followed.  Within a short distance, Bodager's Mercedes again stopped, this time in the middle of Emmitt Avenue.  As Anderson again prepared to leave his patrol car, Bodager's Mercedes accelerated.  Bodager's Mercedes then turned right onto a private driveway. Bodager drove over old, defunct railroad tracks, turned the Mercedes to the left, and stopped.

{¶ 6}   Bodager's recollection of what happened prior to this point differs from Anderson's.  Bodager was driving eastbound on Emmitt Avenue because he was going to visit his girlfriend, who was at a friend's home.  Bodager saw the friend's car, a yellow Volkswagen Beetle, pass him going the opposite direction.  Bodager assumed that his friend and girlfriend were headed to his house, so he decided to turn around and follow

them. Bodager then turned left onto Ford Avenue, turned left onto the alley, and turned right onto Emmitt Avenue.

{¶ 7} After turning onto Emmitt Avenue, Bodager saw headlights in his rearview mirror and thought that one of his friends might be in the car behind him. Bodager did not see any police lights or hear a siren, nor did he stop his car in the alleyway or on Emmitt Avenue. Bodager decided to pull onto a private driveway so he could stop and speak with whoever was in the car behind him. When Bodager drove over the railroad tracks, he thought his Mercedes had hit something, so he stopped his car and jumped out to see what he had collided with. According to Bodager, it was at that point that he first saw police.

{¶ 8} Fortunately, the remainder of Bodager's January 1, 2007 encounter with the police is memorialized in a video recording. Seconds before Bodager turned onto the private driveway, Trooper Throckmorton of the Ohio State Highway Patrol pulled behind Anderson's patrol car. Throckmorton's cruiser was equipped with a video recording device, which recorded what happened next.

{¶ 9} Throckmorton stopped his cruiser at the base of the private driveway. Bodager had driven his Mercedes further up the driveway before turning to the left and stopping in grassy area next to the driveway. Thus, the video recording shows the Mercedes in profile, with its driver's side facing the viewer.

{¶ 10} In the recording, Bodager immediately jumps out of his Mercedes after stopping it. Throckmorton and Anderson exit their cars as Bodager exits his. Throckmorton yells, "Stay in the car. Stay in the car." Bodager, who is already out of his Mercedes, remains standing next to it, facing the officers. Throckmorton then yells, "Get your hands up. Get your hands up." Anderson says, "Hands up in the air, now." Bodager

raises both hands into the air. By this time, Throckmorton and Anderson have their weapons drawn and pointed at Bodager.

{¶ 11} Anderson yells, "Turn around; face forward." Bodager drops his hands, turns toward his Mercedes, and walks a few steps to the rear side panel of the Mercedes. Anderson repeats, louder, "Turn around; face forward." At the same time, Throckmorton yells, "Keep your hands up." Bodager places his left hand next to the rear, backseat window and his right hand on top of the trunk. Anderson walks to Bodager, stands immediately behind him, and re-holsters his weapon. Throckmorton walks closer to Bodager and Anderson and stands to Bodager's left with his weapon still drawn and pointed at Bodager. Anderson tells Bodager to "place [his] right hand behind [his] back." Bodager removes his left hand from the side of the Mercedes and places it behind his back.

{¶ 12} At that point, Throckmorton re-holsters his weapon and moves closer to Bodager and Anderson. As Anderson works to cuff Bodager's left wrist, Bodager stands, moves away from the Mercedes, and drops his right hand from the trunk. Throckmorton yells, "Loosen up" and pushes Bodager's left shoulder and side against the rear window of the Mercedes. Anderson uses his body to push, and then pin, Bodager against the Mercedes. At the same time, an auxillary officer who was riding with Anderson approaches from Bodager's right and puts a hand on Bodager's back. Bodager swears and again tries to stand upright. Throckmorton pushes Bodager's head down and says, "Stay down. Stay down."

{¶ 13} Throckmorton and the auxiliary officer continue their hold on Bodager as Anderson recommences trying to cuff him. Bodager says, "What the f*** are you guys even doing, man? I'm coming to check up on people that I really care about." He then

yells, "My f****** back is in spasms!" and tries to stand upright again. One of the officers says something mostly unintelligible about taking Bodager "out" or "down." Anderson grabs Bodager around the upper chest while Throckmorton turns Bodager to the left and both Throckmorton and Anderson use their legs to try to take Bodager's feet out from under him. Bodager staggers and twirls, but he does not fall. Anderson then grabs Bodager's right shoulder from behind and shoves him to the ground. Bodager uses his right hand, which he had been holding behind his back, to break his fall. When Bodager hits the ground, he falls on his right side with Anderson on top of him. Anderson rolls Bodager onto his belly and crouches above him, straddling him. Anderson grabs Bodager's right hand and places it behind his back. Throughout the struggle, Bodager is yelling, "My f****** back. I'm f****** serious." One of the officers repeatedly says, "On the ground."

{¶ 14} As Bodager and the three officers are struggling, another patrol car arrives. Damon Campbell, a patrol officer with the Waverly Police Department, exits the car with a police canine. Campbell stands a few feet away from the four men on the ground and gives the dog the command to bark. Throckmorton tells Bodager to "relax. That dog won't get you. Relax."

{¶ 15} Anderson finishes cuffing Bodager. Bodager asks to be rolled on his side, and the officers comply. As Bodager is lying on the ground, Anderson searches him. Bodager starts complaining about the officers' treatment of him, and one officer says, "Stop resisting." Bodager replies, "I didn't resist nothing." The officers then help Bodager to his feet and put him in the rear of Anderson's patrol car. Anderson later searched Bodager's Mercedes and found four marijuana roaches in the ashtray.

{¶ 16} Anderson filed a complaint in the Pike County Court charging Bodager with: (1) speeding, a violation of the Codified Ordinances of Waverly, Ohio 333.03 (hereinafter, "W.C.O."), a minor misdemeanor; (2) failure to signal before turning, a violation of W.C.O. 331.14, a minor misdemeanor; (3) failure to use a seatbelt, a violation of W.C.O. 337.27(b)(1), a minor misdemeanor; (4) operating a vehicle under the influence of a drug of abuse, a violation of W.C.O. 333.01(a)(1)(A), a first degree misdemeanor; (5) failure to comply with an officer, a violation of W.C.O. 303.01(a), a first degree misdemeanor; and (6) resisting arrest, a violation of W.C.O. 525.09(a), a second degree misdemeanor. Bodager agreed to plead guilty to the speeding, turn signal, and seatbelt violations in return for a dismissal of the remaining charges. The entry dismissing the failure to comply, resisting arrest, and OVI violations states that dismissal was "not due to lack of probable cause to arrest."

{¶ 17} On December 9, 2010, Bodager filed a complaint against defendants, alleging claims for violation of 42 U.S.C. 1983, malicious prosecution, false arrest, and battery. Defendants moved for summary judgment. In a decision and judgment dated February 27, 2012, the trial court granted defendants' motion.

{¶ 18} Bodager now appeals the February 27, 2012 judgment, and he assigns the following errors:

> [1.] The Trial Court Erred in Granting Summary Judgment as to Mr. Bodager's 1983 Use of Force Claim and the Accompanying Common Law Claims[.]

> [2.] The Trial Court Erred in Granting Summary Judgment as to Mr. Bodager's 1983 Wrongful Arrest and Prosecution Claims and the Accompanying Common Law Claims.

{¶ 19} Both of Bodager's assignments of error challenge the trial court's summary judgment ruling. Summary judgment is appropriate when the moving party

demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Wells Fargo v. Phillabaum*, 192 Ohio App.3d 712, 2011-Ohio-1311, ¶ 7 (4th Dist.).

{¶ 20} By his first assignment of error, Bodager argues that the trial court erred in granting defendants summary judgment on the state law claims of assault and battery, as well as the federal law claim that Anderson and Campbell violated 42 U.S.C. 1983 by using excessive force. We disagree with each of Bodager's arguments.

{¶ 21} To prevail on a 1983 claim, a plaintiff must establish that (1) the conduct in controversy was committed by a person acting under color of law, and (2) the conduct deprived the plaintiff of a federal right, either constitutional or statutory. *Ziegler v. Aukerman*, 512 F.3d 777, 782 (6th Cir.2008). Here, the parties do not dispute that Anderson and Campbell were acting under color of law. The dispute focuses, instead, on whether the force that Anderson and Campbell used against Bodager violated the Fourth Amendment prohibition against unreasonable seizures of the person.

{¶ 22} In determining whether the force used violates the Fourth Amendment, courts must examine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). These facts and circumstances include the severity of the crime at issue, whether

the suspect poses an immediate threat to the safety of law enforcement officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396.

{¶ 23} "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*; *accord Saucier v. Katz*, 533 U.S. 194, 205 (2001), *overruled in part on other grounds*, *Pearson v. Callahan*, 555 U.S. 223 (2009) (cautioning "against the '20/20 vision of hindsight' in favor of deference to the judgment of reasonable officers on the scene"). Not every push or shove, even if it seems unnecessary in the peace of the judge's chambers, violates the Fourth Amendment. *Graham* at 396. All reasonableness analyses must allow for the fact that law enforcement officers must often make split-second judgments—in tense, uncertain, and rapidly evolving circumstances—about the amount of force that is necessary in a particular situation. *Id.* at 396-97; *accord Bennett v. Krakowski*, 671 F.3d 553, 561 (6th Cir.2011) (warning that courts " 'must avoid substituting [their] personal notions of proper police procedure for the instantaneous decision of the officer at the scene' "); *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir.2002) (holding that the objective-reasonableness standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case").

{¶ 24} Here, Anderson first used force against Bodager when he pushed Bodager against the Mercedes after Bodager used his upper body to "push[ ] back" away from the Mercedes. (Brian Anderson deposition, at 54.) According to Anderson, in addition to pushing back with a "resisting, turning motion," Bodager also held his right hand against the front of his body so that Anderson had difficulty maneuvering it into place to cuff it.

(Brian Anderson deposition, at 54-56.) The third time Bodager pushed back and tried to straighten, Anderson, with Throckmorton's assistance, shoved Bodager to the ground.

{¶ 25} Anderson interpreted Bodager's movements—pushing back and holding his right hand against his body—as attempts to resist being handcuffed. Resistance to handcuffing justifies the use of some force. *Burchett* at 944. Bodager, however, argues that a question of fact exists regarding whether he resisted. Bodager claims that he expressed surprise and bewilderment, not resistance, in response to being handcuffed. Neither Bodager's deposition nor the video recording supports this claim. Bodager offered no testimony regarding his actions after he jumped out of his Mercedes. Thus, the record contains no testimony from Bodager that contradicts Anderson's description of Bodager's actions during the handcuffing. Moreover, the video recording shows Bodager straightening away from the Mercedes three times, which substantiates Anderson's assertion that Bodager resisted by pushing back.[2] We conclude, therefore, that no issue of fact remains regarding whether Bodager resisted detention.

{¶ 26} Given Bodager's resistance, the force that Anderson used against Bodager was objectively reasonable. Exercising the necessary deference to the officers on the scene, we conclude that Anderson employed limited force in order to handcuff a resisting suspect. The force used was necessary and reasonable, not gratuitous and excessive.

{¶ 27} Unlike Anderson, Campbell never touched Bodager. Campbell only directed his police canine to bark while Anderson was struggling to handcuff Bodager. The mere presence of a police dog, while intimidating, does not amount to the use of excessive force.

---

[2] Generally, Anderson's description of Bodager's actions corresponds with the events as shown on the video recording. Due to the positioning of Bodager and the officers, the video recording does not capture Bodager holding his right hand against his body. Bodager, however, does not dispute that he did so.

*Franklin v. Borough of Carteret Police Dept.*, D.N.J. No. CIV.A. 10-1467 JLL (Nov. 15, 2010); *Gaines v. Gloucester City Police Dept.*, D.N.J. No. CIVA 08-3879 (Mar. 3, 2010).

{¶ 28} In sum, neither Anderson nor Campbell used excessive force against Bodager. Accordingly, we conclude that the trial court did not err in granting Anderson and Campbell summary judgment on Bodager's claim that they violated 42 U.S.C. 1983 through the use of excessive force.

{¶ 29} Bodager next argues that the trial court erred in granting defendants summary judgment on his claims for assault and battery. Although Bodager's complaint contains a claim for battery, it does not plead an assault claim. Neither the parties' summary judgment briefing nor the trial court's judgment mentions an assault claim. An appellant may not introduce on appeal a new cause of action that was never raised before the trial court. *Kalish v. Trans World Airlines, Inc.*, 50 Ohio St.2d 73, 77 (1977); *VanNostran Young Ins. Agency v. State Auto Ins. Co.*, 5th Dist. No. 2002-CA-00371, 2003-Ohio-4393, ¶ 25; *Dayton Walther Corp. v. Specialized Carriers, Inc.*, 4th Dist. No. 1702 (Sept. 30, 1988). Consequently, we will not consider the belatedly raised assault claim.

{¶ 30} With regard to his battery claim, Bodager contends that, if Anderson and Campbell are not entitled to qualified immunity from liability for their violation of 42 U.S.C. 1983, then they are also not entitled to immunity from liability for battery. We need not decide any immunity questions because the premise of Bodager's argument is wrong. Immunity from state law claims turns not on the federal qualified immunity doctrine, but on R.C. 2744.03(A)(6). *Loggins v. Franklin Cty.*, S.D.Ohio No. 2:02-CV-964 (July 20, 2005), *aff'd*, 218 Fed.Appx. 466 (6th Cir.2007) ("Although § 2744.03(A)(6) cannot shield an individual from federal claims, it can provide immunity from state law

claims absent the application of a statutory exception."). Pursuant to R.C. 2744.03(A)(6), any political subdivision employee is immune from liability unless the employee's actions or omissions are manifestly outside the scope of employment or the employee's official responsibilities; the employee's acts or omissions were malicious, in bad faith, or wanton or reckless; or liability is expressly imposed upon the employee by a section of the Revised Code. *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, ¶ 36. The trial court determined that Anderson and Campbell are immune from liability under R.C. 2744.03(A)(6) for Bodager's state claims. On appeal, Bodager presents no argument challenging that determination. Accordingly, Bodager fails to present this court with any reason to reverse the trial court's summary judgment decision on Bodager's battery claim.

{¶ 31} Finally, Bodager argues that the trial court erred in granting summary judgment to Waverly on Bodager's claim that Waverly violated 42 U.S.C. 1983 by failing to properly train Anderson and Campbell. Bodager repeats this same argument under his second assignment of error. However, neither the first nor second assignment of error relate to this argument. The assignments of error allege error in the trial court's ruling on Bodager's 1983 claims for excessive force, wrongful arrest, and wrongful prosecution. They do not mention Bodager's 1983 claim for failure to properly train.

{¶ 32} Appellate courts determine appeals on the basis of assignments of error rather than arguments in support of assignments of error. App.R. 12(A)(1)(b); *Grimes v. Grimes*, 4th Dist. No. 10CA23, 2012-Ohio-3562, ¶ 36, fn. 10; *Valentine v. PPG Industries, Inc.*, 145 Ohio App.3d 265, 273 (4th Dist.2001). Accordingly, we decline to address Bodager's argument regarding his 1983 claim for failure to properly train.

{¶ 33} In sum, all of the arguments under Bodager's first assignment of error fail. We therefore overrule Bodager's first assignment of error.

{¶ 34} By Bodager's second assignment of error, he argues that the trial court erred in granting defendants summary judgment on state law claims for false arrest, wrongful detainment, and malicious prosecution, as well as his federal law claim that Anderson and Campbell violated 42 U.S.C. 1983 when they wrongfully arrested him.[3]  We disagree with each argument.

{¶ 35} In a wrongful arrest claim premised on 42 U.S.C. 1983, the plaintiff asserts that law enforcement officers deprived him or her of the Fourth Amendment right to be free from unreasonable seizures of the person.  "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  Thus, for a wrongful arrest claim to succeed under 42 U.S.C. 1983, a plaintiff must prove that the police lacked probable cause to arrest. *Miller v. Sanilac Cty.*, 606 F.3d 240, 250 (6th Cir.2010); *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir.2007).

{¶ 36}  Here, Bodager points out that, under the circumstances of this case, R.C. 2935.26 prohibited the Waverly police from arresting him for the minor misdemeanors he committed—speeding, turning without signaling, and failure to use a seatbelt.[4]  Due to the statutory prohibition, Bodager asserts that the Waverly police could not have probable cause to arrest him for the minor misdemeanors he committed and, thus, an arrest for

---

[3] Bodager did not plead a state law claim for "wrongful detainment" in his complaint.  Moreover, our review of Ohio law has uncovered no precedent establishing such a state law claim.  Therefore, we treat Bodager's claim for false arrest as subsuming Bodager's claim for "wrongful detainment."

[4] R.C. 2935.26(A) states that "[n]otwithstanding any other provision of the Revised Code, when a law enforcement officer is otherwise authorized to arrest a person for the commission of a minor

those minor misdemeanors violated the Fourth Amendment. Bodager's argument contravenes Fourth Amendment precedent.

{¶ 37} "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001). The United States Supreme Court applied this rule in *Virginia v. Moore*, 533 U.S. 164 (2008), a case factually similar to this case. In *Moore*, the defendant was arrested for the misdemeanor of driving with a suspended license even though Virginia law prohibited the arrest under the circumstances presented. The Supreme Court concluded that, despite the state law, the defendant's arrest did not violate the Fourth Amendment. Although a state may provide more protection from warrantless arrests than the federal Constitution, that enhanced protection does not govern the scope of protection afforded by the Fourth Amendment. *Id.* at 171-74. Thus, the Supreme Court held that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Id.* at 176. In other words, "if an arrest is otherwise reasonable, the fact that it is not for an 'arrestable' offense [under state statute] does not make it unconstitutional." *Thomas v. Peoria*, 580 F.3d 633, 637 (7th Cir.2009).[5]

---

misdemeanor, the officer shall not arrest the person, but shall issue a citation, unless" certain circumstances exist.

[5] We recognize that an arrest for a minor misdemeanor where none of the R.C. 2935.26 exceptions apply would violate the Ohio Constitution. *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, ¶ 25. This is one area in which the Ohio Constitution provides greater protection than the federal Constitution. *Id.* at syllabus. However, this difference in the level of protection does not impact our analysis of Bodager's 1983 claim. As we stated above, a violation of 42 U.S.C. 1983 requires proof of a deprivation of a *federal* right. *Ziegler*, 512 F.3d at 782. "[S]tates cannot create federal constitutional rights actionable under § 1983." *Wilson v. Morgan*, 477 F.3d 326, 332 (6th Cir.2007).

{¶ 38} Here, Bodager does not contest that he sped, failed to use a signal before turning, or failed to use his seatbelt. As Anderson saw Bodager committing those offenses, Anderson had probable cause to arrest Bodager, making that arrest constitutionally reasonable under the Fourth Amendment. Moreover, Bodager cannot challenge Anderson's probable cause that he committed the minor misdemeanors because he conceded that he committed those offenses when he pleaded guilty to them. *Jackim v. Sam's E., Inc.*, 378 Fed.Appx. 556, 561 (6th Cir.2010). Collateral estoppel precludes Bodager from using a civil action brought under 42 U.S.C. 1983 to re-litigate issues already decided in a prior criminal case. *Id.* Accordingly, we conclude that the trial court did not err in granting Anderson and Campbell summary judgment on Bodager's claim that they violated 42 U.S.C. 1983 by wrongfully arresting him.

{¶ 39} Bodager next argues that the trial court erred in granting summary judgment against him on two state law claims—false arrest and malicious prosecution. As we stated above, the trial court determined that Anderson and Campbell are immune from liability under R.C. 2744.03(A)(6) for the state law claims. Additionally, the trial court determined that R.C. Chapter 2744 did not permit Bodager to bring his state law claims against Waverly. Bodager presents no argument challenging those immunity determinations. Consequently, Bodager has failed to present this court with any reason to reverse summary judgment on his state law claims of false arrest and malicious prosecution.

{¶ 40} In sum, we conclude that none of Bodager's assertions under his second assignment of error justify reversal. Accordingly, we overrule Bodager's second assignment of error.

{¶ 41} For the foregoing reasons, we overrule Bodager's two assignments of error, and we affirm the judgment of the Pike County Court of Common Pleas.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

* Tyack, J. & Brown, J.: Concur in Judgment and Opinion.

For the Court

BY: _____

William A. Klatt, Presiding Judge *

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**

* William A. Klatt, G. Gary Tyack, and Susan D. Brown of the Tenth Appellate District, sitting by assignment in the Fourth Appellate District.